**PHILLIPS DAYES**
LAW FIRM
*A Professional Corporation*
3101 North Central Avenue, Suite 1500
Phoenix, Arizona 85012
docket@phillipsdayeslaw.com
Dennis Evans, California Bar # 276923
Trey Dayes, Arizona Bar # 020805 (*pro hac vice pending)*
Sean C. Davis, Arizona Bar #030754 (*pro hac vice pending*)
Preston K. Flood, Arizona Bar #037264 (*pro hac vice pending*)
(602) 288-1610 ext. 301

Attorneys for Plaintiffs

**DISTRICT OF CALIFORNIA**
**NORTHERN DISTRICT**

| | |
|---|---|
| Reshad Saleh; individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> Valbin Corporation, a Virginia corporation; <br><br> Defendant, | Case No.: <br><br> **COLLECTIVE ACTION COMPLAINT AND DAMAGES FOR:** <br> 1) **Violations of the FLSA** <br> 2) **Declaratory Relief** |

Plaintiff Reshad Saleh, (hereinafter "Plaintiff"), individually and on behalf of all similarly situated employees, alleges as follows:

## **NATURE OF THE CASE**

1. Plaintiff and all similarly situated employees bring this action against Defendant for unlawful failure to pay overtime wages in direct violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and specifically the overtime provision of the Act found at § 207(a).

2. For at least three (3) years prior to the filing of this action, Defendant had a consistent policy and practice of requiring its employees to work far in excess of forty (40) hours per week without paying them time and a half for all hours worked over forty (40) hours

per week.

3. Plaintiff and all similarly situated employees seek to recover unpaid overtime compensation and an equal amount of liquidated damages, including interest thereon, statutory penalties, attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

4. The class is comprised of current and former non-exempt, hourly employees who worked on "rotations" for Defendant's Fort Hunter Liggett project (the "Project") located at the Fort Hunter Liggett Military Base in California. Plaintiff seeks to represent other current and former non-exempt, hourly employees who worked for Defendant on the Project. Plaintiff alleges Defendant has engaged in unlawful patterns and practices of failing to overtime pay as required by the FLSA.

5. This is a collective action complaint on behalf of individuals who worked on "rotations" for the Project located at the Fort Hunter Liggett Military Base in California for the VALBIN CORPORATION, to challenge its policies and practices of: (1) failing to pay its non-exempt, hourly employees for all hours worked, including overtime compensation.

6. Plaintiff and Putative Class Members would work 16-19 day "rotations" for which Defendant would not credit Plaintiff and Putative Class Members for all hours worked, including overtime work for which they were not adequately compensated at time and one half.

7. This daily time that Defendant required Plaintiff and Putative Class Members to work without compensation deprives them of substantial amounts of pay to which they are entitled under Federal law.

8. Defendant and Plaintiffs and Putative Class Members had no agreement to exclude sleep time from their compensation.

9. Employees would regularly complain about not being paid for this time, and were simply told if they did not like it they could go home.

10. Employees were trapped on a base for the entirety of a rotation and had no means to leave.

11. Employees would regularly be woken up at all times in the night during the rotations.

12. Plaintiff and Putative Class Members did not receive a period of five hours of uninterrupted sleep time and as such sleep time is compensable.

13. Plaintiff and Putative Class Members effectively could not leave the Fort Hunter Liggett Military Base once they arrived at the base for a rotation.

14. Plaintiff and Putative Class Members were required to stay on the base every day, 24 hours per day, until the rotation was over.

15. Plaintiff and Putative Class Members were under the control of the Defendant from the moment they arrived for a rotation and until the rotation was over.

16. If Plaintiff or Putative Class Member were to leave the base during a rotation, they would not be welcome back to continue to work.

17. Plaintiff seeks to represent class under Federal law to seek full compensation for all overtime wages.

18. Plaintiff also seeks declaratory relief.

19. Finally, Plaintiff seeks reasonable attorneys' fees and costs under the Fair Labors Standards Act.

## JURISDICTION AND VENUE

20. This action arises under § 16(b) of the Fair Labor Standards Act ("FLSA"), and 29 U.S.C. §216(b).The jurisdiction of the Court over this matter is founded pursuant to the FLSA under 29 U.S.C. § 216(b). "An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in

1 any Federal or State court of competent jurisdiction." 29 U.S.C. 216(b).

21. Venue is proper in this County pursuant to California C.C.P § 395.5 because Defendant is a corporation that does regular business in California and the substantial portion of the underlying allegations and events in this Complaint occurred in this County.

22. This Court is empowered to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## **PARTIES**

23. At all times material hereto, Plaintiff was a resident of the state of California.

24. On information and belief, at all times material hereto, Defendant Valbin Corporation has been doing business in the State of California. Valbin Corporation is a Virginia corporation registered with the California Secretary of State to do business in California as a corporation under the same name.

25. Plaintiff and Putative Class Members worked for Defendant at the Fort Hunter Liggett Military Base in California.

26. Plaintiff was a non-exempt hourly paid role player who began work for Defendant in 2014.

27. At all relevant times, Plaintiff and all similarly situated employees were each an "employee" of Defendant, as defined by 29 U.S.C. § 203(e)(1).

28. The provisions set forth in 29 U.S.C § 206 and § 207 of the FLSA apply to Defendant.

29. At all relevant times, Defendant was, and continues to be an "employer" as defined in 29 U.S.C. § 203(d).

30. Upon information and belief, at all times alleged, Defendant was a corporation qualified to and doing business in the State of California.

31. Upon information and belief, at all times alleged, the annual gross revenue of Defendant exceeded $500,000.00.

## COLLECTIVE ACTION ALLEGATIONS

32. Plaintiff brings this Complaint as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all similarly situated persons for the violations of the FLSA as alleged herein.

33. Specifically, Plaintiffs request certification of this case as a collective action on behalf of the following Class of persons:

- All persons who, during the preceding three years to the date of filing of this lawsuit, are or were employed by Defendant as role players who worked for Defendant at the Fort Hunter Liggett Military Base in California.

34. The putative class members are similarly situated.

35. This Action may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b) because the persons similarly situated were subject to substantially similar policies imposed by Defendant and are therefore similarly situated.

## BACKGROUND

36. The Fort Hunter Liggett Military Base in California ("Fort Hunter Liggett") is one of the largest training bases for the United States Armed Forces.

37. Many soldiers who will be deploying to the Middle East or neighboring regions undergo training at Fort Hunter Liggett which includes simulation training in fabricated Middle Eastern villages other terrains, and simulated battle fields comprised of native role-players.

38. These fabricated installations aid in the training of troops in urban Middle Eastern warfare prior to deployment.

39. The villages are created to look like real villages from Iraq, Afghanistan, or other Middle Eastern countries and have attributes such as mosques, traffic circles, and many more.

40. The role players fill the villages and the terrain and act out the roles of the natives inhabiting the villages during rotations.

41. Defendant provided Fort Irwin with role-players who would aid the soldiers in these realistic pre-deployment training rotations.

42. Through a contract with the United States Military, Defendant has been paid millions of dollars for these services.

43. Role players would occupy the village, taking on the roles of all the inhabitants of the village, or other required characters, during the training rotations.

44. Plaintiff and the Putative Class Members would use their own transportation to arrive at the base, from which Defendant would bus Plaintiffs and Putative Class Members to Fort Hunter Liggett.

45. The rotations would vary in length from three to nineteen days.

46. During these rotations, role players would be in character for the entire period, 24 hours per day.

47. Once a role player arrived at Fort Hunter Liggett to begin a rotation, they were not allowed to leave the base for any reason. If they left the base, they were not allowed to return.

48. The role players would reside and sleep in simulated Middle Eastern Village, military tents, or similar accommodations with no running water or electricity.

49. These military tents were shared by dozens of Role Players at the same time.

50. These military tents were more than 10 miles from the entrance to the base.

51. The Middle Eastern Villages was more than 10 miles from the entrance to the

1 base.

52. Troops would interact with the role players at all times of the day and night in accordance with the specific rotation tasks.

53. The exercises during these rotations are completely unscripted and can occur at any time, day or night.

54. Role players were under the direction of site managers employed by Defendant while on rotation.

55. The site managers controlled role player's daily activities and schedule.

56. Defendant directed, commanded, and restrained the role players from leaving the work place during a rotation.

57. Role Players could not use their time effectively for their own purposes.

58. Role players could not consume alcohol while on base.

59. Role players did not have the ability to use a cell phone while on base.

60. Role players were not allowed to bring laptops with them on a rotation.

61. Role players were not allowed to bring other portable devices with them on a rotation.

62. Role players could not have children on base during a rotation.

63. Role players could not have pets on base during a rotation.

64. Role players could not visit with friends while on rotation.

65. Role players could not visit with family while on rotation.

66. Role players did not have access to recreation such as gyms, parks, stores, movie theatres, or restaurants.

67. Plaintiff and Putative Class Members were primarily directed in duties for the fulfillment of Defendant's requirements for the jobs and were substantially restricted from

1 personal activities.

68. They were always required to be on duty, in character and costume.

69. Role players had no access to any personal freedoms while on rotation.

70. Role players were under the control of the Defendant during the entire span of each rotation.

71. Defendant forced an on-premises living requirement on role players.

72. There were excessive geographical restrictions on role players.

73. Since exercises could happen at any time, day or night, Plaintiff and Putative Class Members were held to an unduly restrictive response time.

74. Plaintiff and Putative Class Members could not trade their responsibilities with others during a rotation.

75. Plaintiff and Putative Class Members effectively had to stay on the base

76. Defendant was paid for supplying role players to be on the base.

77. Plaintiff and Putative Class Members were on the base for the benefit of the Defendant.

78. Defendant derived a significant benefit from having role players on the base 24 hours per day.

79. Defendant allowed the military to fully perform these exercises by stationing their role players on base so that the Army could conduct exercises at any time.

80. If role players were not on the base, the Army could not perform exercises at all times, which would greatly reduce the marketability of the role player services Defendant provided to the military.

81. Plaintiff and Putative Class Members' sleep was regularly interrupted by rotation scenarios.

82. When sleep time was interrupted, Plaintiff and Putative Class Members were not able to get five hours of uninterrupted sleep.

83. Once on the base, role players were not allowed to leave the base under any circumstance until the rotation was over.

84. Role players were required to live on the base, in the fabricated village during the entirety of the rotation and stay in character the entire time on base.

85. Role players were never out of character, permanently assuming the role they were assigned until the end of the rotation.

86. Role players were under the control of Defendant from the minute they were on the base.

87. Defendant did not allow Plaintiff to leave the base during a rotation.

88. If an employee left the base during a rotation, he would not be allowed to return.

89. The sleeping facilities provided to employees were not adequate.

90. The sleeping facilities had no air conditioning or heating capabilities.

91. Employees suffered through the extreme temperatures of that region.

92. There was no privacy, no electricity, and no running water.

93. Role players would be compensated for a maximum of thirteen (13) hours in a day. Plaintiff and Putative Class Members must be compensated for all sleep time as there was an on-premises living requirement.

94. Plaintiff and Putative Class Members were not provided private sleeping quarters.

95. Plaintiff and Putative Class Members were not provided quarters in a homelike environment.

96. Plaintiff and Putaive Class members slept in tents or similar type of sleeping

accommodations.

97. Defendant and Plaintiff and Putative Class Members never entered into a reasonable agreement in advance regarding compensable time.

98. Defendant never provided Plaintiff and Putative Class Members with a written agreement regarding compensable time.

99. Defendant deducted more than eight hours of pay each day for sleep.

100. Plaintiff and Putative Class Members were non-exempt employees.

101. Plaintiff and Putative Class Members had no supervision or management responsibilities.

102. Plaintiff and Putative Class Members could neither hire nor fire employees.

103. Plaintiff and Putative Class Members had no authority to exercise significant independent judgment on issues that affect the whole company when carrying out their job responsibilities.

104. Defendant managed, supervised, and directed all aspects of employees' job duties and responsibilities.

105. The employees' primary duty was not the performance of work directly related to the management or general business operations of Defendant or their customers.

106. During the entire relevant period, Plaintiff and Putative Class Members routinely worked in excess of forty hours per week.

107. During rotations, role players did not have an uninterrupted five-hour sleep period.

108. During rotations, role players were on duty and frequently woken up to role play. If they were awoken for part of a rotation, they were not compensated for that time.

109. Plaintiff and Putative Class Members never entered into an agreement to exclude

from hours worked a bona fide regularly scheduled uninterrupted sleeping period.

110. Plaintiff was told but disagreed and complained about this policy.

111. Plaintiff was told if he did not like it, he could simply go home.

112. Defendant's failure and/or refusal to properly compensate Plaintiff and all similarly situated employees at the rates and amounts required by the FLSA was willful and knowing.

113. Defendant is aware of the requirements under the FLSA to properly compensate employees.

114. Defendant refused and/or failed to properly disclose or apprise Plaintiff and all similarly situated employees of their rights under the FLSA.

115. Plaintiff was paid by the hour.

116. Plaintiff was not paid as a 1099 independent contractor.

117. Plaintiff was provided a W-2 for pay received from defendant.

118. All of Plaintiff's income was properly reported to the IRS.

119. Plaintiff was an employee of defendant.

120. Defendant is aware of, and was able to comply with, all aspects of the FLSA.

121. Plaintiff has retained the law firms of Phillips Dayes Law Firm PC, to represent him in this litigation and has agreed to pay a reasonable fee for the services rendered in the prosecution of this action on their behalf.

**COUNT ONE**
**(Failure to Pay Proper Overtime Wages – FLSA – 29 U.S.C. § 207)**
**(By Plaintiff and the FLSA Collective Class)**

122. Plaintiff incorporates and adopts paragraphs 1 through 121 above as if fully set forth herein.

123. While employed with Defendant, Plaintiff and all similarly situated employees

consistently and regularly worked multiple hours of overtime a week.

124. Defendant has intentionally failed and/or refused to pay Plaintiff and all similarly situated employees' overtime according to the provisions of the FLSA.

125. Defendant further has engaged in a widespread pattern and practice of violating the provisions of the FLSA by failing to pay Plaintiffs and all similarly situated employees in accordance with § 207 of the FLSA.

126. There are numerous similarly situated employees and former employees of Defendant who have been improperly compensated in violation of the FLSA and who would benefit from the issuance of Court-Supervised Notice of the present lawsuit and the opportunity to join the present lawsuit.

127. The similarly situated employees are estimated to hundredspresent and former employees who have the same job description as Plaintiff and perform the same or similar job functions.

128. Those similarly situated employees are known to Defendant and are readily identifiable and locatable through Defendant's records. Specifically, all current employees and former employees of Defendant who have been employed with Defendant as role players and who worked at the Fort Hunter Liggett Military Base in California, would benefit from Court-Supervised Notice and the opportunity to join the present lawsuit and should be so notified.

129. As a result of Defendant's violations of the FLSA, Plaintiff and all similarly situated employees have suffered damages by failing to receive compensation in accordance with § 207 of the FLSA.

130. Under 29 U.S.C.§216 Defendant is liable to Plaintiff and all similarly situated

employees for an amount equal to one and one-half times their regular pay rate for each hour of overtime worked per week.

131. In addition to the amount of unpaid wages owed to Plaintiff and all similarly situated employees, they are also entitled to recover an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

132. Defendant's actions in failing to compensate Plaintiff and all similarly situated employees, in violation of the FLSA, were willful.

133. Defendant has not made a good faith effort to comply with the FLSA.

134. Plaintiff is also entitled to an award of attorneys' fees pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff respectfully request that judgment be entered in their favor against Defendant:

    a. Awarding Plaintiffs and all similarly situated employees overtime compensation in the amount due to them for all of Plaintiffs and all similarly situated employees' time worked in excess of forty (40) hours per work week at an amount equal to one and one-half times Plaintiffs and all similarly situated employees 's regular rate while at work with Defendant;

    b. Awarding Plaintiffs and all similarly situated employees liquidated damages in an amount equal to the overtime award pursuant to 29 U.S.C. § 216(b)

    c. Awarding Plaintiffs and all similarly situated employees reasonable attorneys' fees and costs and expenses of the litigation pursuant to 29 U.S.C. § 216(b);

    d. For Plaintiffs' and all similarly situated employees' costs incurred in this

action;

  e. Awarding Plaintiffs and all similarly situated employees pre-judgment interest, at the highest legal rate, on all amounts set forth in subsections (a) and (b) above from the date of the payment due for that pay period until paid in full;

  f. Awarding Plaintiffs and all similarly situated employees post-judgment interest, at the highest legal rate, on all awards from the date of such award until paid in full;

  g. Granting Plaintiffs an Order, on an expedited basis, allowing them to send Notice of this action, pursuant to 29 U.S.C. § 216(b), to those similarly situated to Plaintiffs; and

  h. For such other and further relief as the Court deems just and proper.

## COUNT TWO
## DECLARATORY RELIEF
**(By Plaintiff and the FLSA Collective Class)**

135. Plaintiff and all similarly situated employees incorporate and adopt paragraphs 1 through 134 above as if fully set forth herein.

136. Plaintiff and all similarly situated employees and Defendant have a FLSA dispute pending, which the Court has jurisdiction to hear pursuant to 28 U.S.C. § 1331, as a federal question exists.

137. The Court also has jurisdiction to hear Plaintiff's and all similarly situated employees' request for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

138. Plaintiff and all similarly situated employees may obtain declaratory relief.

139. Defendant employed Plaintiff and all similarly situated employees.

140. Defendant's business is an enterprise covered by the FLSA.

141. Plaintiff and all similarly situated employees were individually covered by the FLSA.

142. Plaintiff and all similarly situated employees are entitled to overtime wages pursuant to 29 U.S.C. § 207.

143. Plaintiff and all similarly situated employees are entitled to an equal amount of liquidated damages as Defendant's policy of failing to pay proper overtime compensation remain in effect.

144. The damages suffered by Plaintiff and all similarly situated employees are ongoing.

145. Plaintiff and all similarly situated employees will suffer future damages for which there is no adequate remedy at law.

146. Defendant did not rely on a good faith defense in their failure to abide by the provisions of the FLSA and failure to pay overtime compensation.

147. It is in the public interest to have these declarations of rights recorded as Plaintiff and all similarly situated employees' declaratory judgment action serves the useful purposes of clarifying and settling the legal relations at issue, preventing future harm, and promoting the remedial purposes of the FLSA.

148. The declaratory judgment action further terminates and affords relief from uncertainty, insecurity, and controversy giving rise to the proceeding.

WHEREFORE, Plaintiff and all similarly situated employees respectfully request that judgment be entered in his favor against the Defendant:

   a. Declaring, pursuant to 29 U.S.C. §§ 2201 and 2202, that the acts and practices complained of herein are in violation of the overtime provisions of the FLSA;

and,

b. For such other and further relief as the Court deems just and proper.

Dated: February 6, 2017                Respectfully submitted,

**PHILLIPS DAYES LAW FIRM PC**

By  */s/ - Dennis Evans*
    Dennis Evans
    Trey Dayes
    Sean C. Davis
    Preston K. Flood