UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RESHAD SALEH,<br><br>          Plaintiff,<br><br>    v.<br><br>VALBIN CORPORATION,<br><br>          Defendant. | Case No. 17-CV-00593-LHK<br><br>**ORDER GRANTING MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION CERTIFICATION AND ISSUANCE OF NOTICE**<br><br>Re: Dkt. No. 47 |

Plaintiff Reshad Saleh ("Saleh"), on behalf of himself and all others similarly situated, brings this action against Defendant Valbin Corporation ("Valbin"). Before the Court is Saleh's Motion for Conditional FLSA Collective Action Certification and Issuance of Notice. ECF No. 47. Having considered the parties' briefing, the relevant law, and the record in this case, the Court GRANTS Saleh's Motion for Conditional FLSA Collective Action Certification and Issuance of Notice.

**I.    BACKGROUND**

**A.    Factual Background**

Saleh alleges that he is a former employee of Valbin who worked as a non-exempt role

1

Case No. 17-CV-00593-LHK
ORDER GRANTING MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION CERTIFICATION AND ISSUANCE OF NOTICE

player at the Fort Hunter Liggett Military Base in California. ECF No. 1 ("Compl.") ¶¶ 25-26. Many members of the U.S. military deploying to the Middle East or neighboring regions undergo training at Fort Hunter Liggett that "includes simulation training in fabricated Middle Eastern villages," other terrains, and simulated battlefields featuring native role players. *Id.* ¶ 37. "The villages are created to look like real villages from Iraq, Afghanistan, or other Middle Eastern countries and have attributes such as mosques [and] traffic circles." *Id.* ¶ 39. During rotations lasting between three and nineteen days, the role players inhabit the villages and other terrain. *Id.* ¶¶ 40, 45.

Saleh alleges that during a rotation, role players were required to be in character twenty-four hours per day. *Id.* ¶ 46. Once a role player arrived at Fort Hunter Liggett to begin a rotation, he was not allowed to leave the base for any reason. *Id.* ¶ 47. Role players resided and slept in the simulated village, military tents, or similar accommodations with no running water, electricity, heating, or air conditioning, according to Saleh. *Id.* ¶¶ 48, 84, 92, 96. Saleh alleges that exercises occurred at all hours of the day and night, *id.* ¶ 53, and that as a result his sleep was regularly interrupted and he was not able to get five hours of uninterrupted sleep, *id.* ¶¶ 81-82, 107-08. Saleh alleges that he was not compensated for sleep time. *Id.* ¶¶ 8-9. Finally, Saleh alleges that he regularly worked more than forty hours per week, *id.* ¶ 106, and was not paid overtime in accordance with 29 U.S.C. § 207, Compl. ¶¶ 124-25.

### B. Procedural History

On February 6, 2017, Saleh filed the instant collective action complaint against Valbin. Compl. Saleh alleges two causes of action: (1) Failure to Pay Proper Overtime Wages in violation of FLSA, 29 U.S.C. § 207; and (2) Declaratory Relief. *Id.* Between August 7, 2017, and October 9, 2017, Saleh filed notices of consent to sue under FLSA for Andrew Ayon (ECF No. 35), Mouayed Vawood (ECF No. 39), Nabil Jany (ECF No. 45), Janan Dawood (ECF No. 50), John Pauls (ECF No. 51), Shallah Obaid (ECF No. 52), Sahara Louissa (ECF No. 53), Adnan Buni (ECF No. 56), and Mustafa Saleh (ECF No. 57).

2

Case No. 17-CV-00593-LHK
ORDER GRANTING MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION CERTIFICATION AND ISSUANCE OF NOTICE

On September 6, 2017, Saleh filed the instant motion for conditional collective action certification. ECF No. 47 ("Mot."). On September 20, 2017, Valbin filed an opposition. ECF No. 49 ("Opp."). On September 27, 2017, Saleh filed a reply. ECF No. 54 ("Reply"). On September 28, 2017, Valbin filed a motion for partial summary judgment against Nabil Jany and Janan Dawood on the basis that any applicable period of limitations had expired as to them. ECF No. 55. On October 12, 2017, Saleh filed a statement of non-opposition to the motion for partial summary judgment. ECF No. 58. On October 13, 2017, the Court granted the motion for partial summary judgment as to Nabil Jany and Janan Dawood. ECF No. 59.

## II. LEGAL STANDARD

Under the FLSA, an employee may bring a collective action on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b). In contrast to class actions pursuant to Rule 23 of the Federal Rules of Civil Procedure, potential participants in a collective action under the FLSA must "opt in" to the suit by filing a written consent with the court in order to benefit from and be bound by a judgment. *Centurioni v. City & Cty. of S.F*, 2008 WL 295096, at *1 (N.D. Cal. Feb. 1, 2008); *see also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Employees who do not opt in are not bound by a judgment and may subsequently bring their own action. *Centurioni*, 2008 WL 295096 at *1.

Determining whether a collective action is appropriate is within the discretion of the district court. *See Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004). The plaintiff bears the burden to show that the plaintiff and the putative collective action participants are "similarly situated." *Id.* The FLSA does not define the term "similarly situated," nor has the Ninth Circuit defined it. *Rivera v. Saul Chevrolet, Inc.*, No. 16-CV-05966-LHK, 2017 WL 3267540, at *2 (N.D. Cal. July 31, 2017). Although various approaches have been taken to determine whether plaintiffs are "similarly situated," courts in this circuit have used an ad hoc,

two-step approach.[1] *See Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010) (Murguia, J.) ("[D]istrict courts within the Ninth Circuit generally follow the two-tiered or two-step approach for making a collective action determination."); *Leuthold*, 224 F.R.D. at 467 ("The court proceeds under the two-tiered analysis, given that the majority of courts have adopted it."); *see also Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (discussing three different approaches district courts have used to determine whether potential plaintiffs are "similarly situated" and finding that the ad hoc approach is arguably the best of the three approaches); *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012) (noting that "conditional certification" involves the exercise of the district court's "discretionary power, upheld in *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), to facilitate the sending of notice to potential class members," and approving ad hoc approach).

Under the two-tiered approach, the court first makes an initial "notice stage" determination of whether potential opt-in plaintiffs exist who are similarly situated to the representative plaintiffs, and thus whether a collective action should be certified for the purpose of sending notice of the action to potential collective action participants.[2] *See, e.g.*, *Thiessen*, 267 F.3d at 1102; *Wellens v. Daiichi Sankyo, Inc.*, No. 13-cv-00581-WHO, 2014 WL 2126877 at *1 (N.D. Cal. May

---

[1] Use of this two-tiered approach has been affirmed by at least six United States Courts of Appeals. *See White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) ("District courts determine whether plaintiffs are similarly situated in a two-step process, the first at the beginning of discovery and the second after all class plaintiffs have decided whether to opt-in and discovery has concluded."); *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012) ("We implicitly embraced this two-step approach, and we affirm its use here."); *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010) (calling the two-tiered approach "sensible"); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008) ("[C]ollective actions typically proceed in two stages."); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008) ("[W]e have sanctioned a two-stage procedure."); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (calling the two-tiered approach arguably the best of three approaches outlined and approving of its use); *see also Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014) (adopting the second-step factors from *Thiessen*, without stating if the two-tiered approach applies), *aff'd*, 136 S. Ct. 1036 (2016).

[2] The sole consequence of conditional certification is the "sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) (internal citations omitted).

22, 2014) ("The question is essentially whether there are potentially similarly-situated class members who would benefit from receiving notice at this stage of the pendency of this action as to all defendants."). "In other words, at this preliminary stage, the focus of the inquiry 'is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated.'" *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010) (quoting *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)) (internal quotation marks omitted).

For conditional certification at this notice stage, the court requires little more than substantial allegations, supported by declarations or discovery, that "the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102; *see also Myers*, 624 F.3d at 555 (noting plaintiffs must make a "modest factual showing"); *Morton v. Valley Farm Transp., Inc.*, 2007 WL 1113999, at *2 (N.D. Cal. Apr. 13, 2007) (describing burden as "not heavy" and requiring plaintiffs to merely show a "reasonable basis for their claim of class-wide" conduct (internal quotation marks and citation omitted)); *Stanfield v. First NLC Fin. Serv., LLC*, 2006 WL 3190527, at *2 (N.D. Cal. Nov. 1, 2006) (holding that the plaintiffs simply "must be generally comparable to those they seek to represent"). The standard for certification at this stage is a "fairly lenient" one that typically results in certification. *Wynn v. Nat'l Broadcasting Co.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002).

Once discovery is complete, and the case is ready to be tried, the party opposing collective action certification may move to decertify the collective action. *Leuthold*, 224 F.R.D. at 467. "[T]he Court then determines the propriety and scope of the collective action using a stricter standard." *Stanfield*, 2006 WL 3190527 *2. At that point, "the court may decertify the class and dismiss the opt-in plaintiffs without prejudice." *Leuthold*, 224 F.R.D. at 467. It is at this second stage that the Court makes a factual determination about whether the opt-in plaintiffs are actually similarly situated, by weighing such factors as: "(1) the disparate factual and employment settings

5

of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." *Id.* (citing *Thiessen*, 267 F.3d at 1103).

Notably, collective actions under the FLSA are not subject to the requirements of Rule 23 of the Federal Rules of Civil Procedure for certification of a class action. *Thiessen*, 267 F.3d at 1105. Thus, even at the second stage, "[t]he requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under Rule 23 of the Federal Rules of Civil Procedure. All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the collective action members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010) (quoting *Wertheim v. Arizona*, 1993 WL 603553, at *1 (D. Ariz. Sept. 30, 1993)).

## III.  DISCUSSION

### A.  Saleh's Claims

Saleh seeks to bring this action on behalf of "[a]ll current and former Role-Players who worked for Defendant at Fort Hunter-Liggett at any time between February 3, 2014 and the present." Reply at 7. Saleh argues that he is similarly situated to the putative collective action participants because Valbin "systematically: (1) failed to provide Plaintiffs with private quarters in a homelike environment; (2) failed to provide Plaintiffs with at least five . . . hours of uninterrupted sleep time per day; and (3) allowed Plaintiffs to work in excess of 40 hours per week without being paid all of their overtime." Mot. at 2. As to overtime, Saleh claims that he never entered into an agreement to exclude from hours worked a regularly scheduled uninterrupted sleeping period. Compl. ¶ 109. In addition, Saleh claims that Valbin had a policy of compensating a maximum of thirteen hours of work per day, regardless of how many hours an employee actually worked. Mot. at 2. In support of his motion for conditional collective action certification, Saleh submits his own declaration, as well as the declarations of opt-in plaintiffs

6

Andrew Ayon and Nabil Jany[3] and a copy of a powerpoint slide deck that Valbin used as part of an employee orientation for its role players at Fort Hunter Liggett. *See* Mot. Exhibit A ("Saleh Decl."), Exhibit B ("Ayon Decl."), Exhibit C ("Jany Decl."), and Exhibit D ("Orientation Slides").

Saleh and Ayon contend that, based on their direct observations and their conversations with other role players, Valbin's general policies and procedures applied to all role players. Saleh Decl. ¶¶ 15-16; Ayon Decl. ¶¶ 15-16. Saleh and Ayon allege that they were required to remain in character at all times during a training rotation because the U.S. military personnel might enter a village at any time day or night as part of their training. Saleh Decl. ¶ 5; Ayon Decl. ¶ 5. Saleh and Ayon claim that they were required to sleep in the fabricated villages, military tents, or similar accommodates with no running water or electricity. Saleh Decl. ¶ 11; Ayon Decl. ¶ 11. They allege that they were compensated a maximum of thirteen hours per day. Saleh Decl. ¶ 8; Ayon Decl. ¶ 8. Presumably as a result of this maximum compensation policy, Saleh and Ayon claim that they were not paid for all of their overtime hours worked while on rotation. Saleh Decl. ¶ 14; Ayon Decl. ¶ 14. They claim that after they entered Fort Hunter Liggett for a rotation, they were not allowed to leave for any reason. Saleh Decl. ¶ 10; Ayon Decl. ¶ 10. If they did leave for any reason, Saleh and Ayon allege that Valbin threatened that Valbin would never again hire them if they left. Saleh Decl. ¶ 19; Ayon Decl. ¶ 19.

The Orientation Slides provide very limited corroboration of Saleh's claims. On a slide entitled "Valbin Policies," the Orientation Slides state, "You must stay in character during the training scenarios." *Id.* at 37.

Finally, Saleh stresses that his burden at the notice stage is not a heavy one. Saleh argues that his sworn declaration, the sworn declaration of Ayon, and his detailed factual allegations in

---

[3] As noted above, the Court granted summary judgment for Valbin as to Jany because Jany's employment with Valbin occurred outside the scope of any applicable statute of limitations. Accordingly, the Court has not considered Jany's declaration in deciding the instant motion. *See Stickle v. SCI W. Market Support Center, L.P.*, No. 08-083-PHX-MHM, 2009 WL 3241790, at *5 (D. Ariz. Sept. 30, 2009) ("Brown's claim fall[s] outside the scope of the statute of limitations, and therefore she has no legally cognizable interest in this lawsuit. Accordingly, her affirmation cannot inform the scope of a conditionally certified class.").

7
Case No. 17-CV-00593-LHK
ORDER GRANTING MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION CERTIFICATION AND ISSUANCE OF NOTICE

the complaint are enough to meet his burden. Mot. at 6. Moreover, Saleh argues that the Court need not even consider evidence provided by the defendant at this stage. *Id.* at 7 (citing *Kress v. PricewaterhouseCoopers*, 263 F.R.D. 623, 628 (E.D. Cal. 2009) ("In determining whether plaintiffs have met [the notice-stage] standard, courts need not consider evidence provided by defendants.")).

## B.    Valbin's Response

Valbin opposes Saleh's motion for conditional certification on several grounds. First, Valbin argues that Saleh has not met his burden to show that he is similarly situated to the other collective action participants he seeks to represent. Opp. at 4. Second, Valbin argues that if the Court conditionally certifies a collective action, the time period defining the collective action membership should only reach back two years, not three, because there is no proof of a willful violation.[4] Opp. at 9. The Court describes these positions in turn in more detail below.

Valbin puts forward at least two reasons that Saleh has failed to show that he is similarly situated to the group he seeks to represent. First, Valbin points out that role players are divided into two types with three different job descriptions, as the Orientation Slides that Saleh submitted outline. Opp. at 4; *see also* Orientation Slides at 7 (summarizing the three different job descriptions). First, there are generic role players, which are also referred to as civilians on the battlefield ("COBs"). COBs have primarily non-speaking roles. Second, there are generic casualty role players, which are COBs with battlefield wounds. Third, there are foreign language speakers ("FLSs"), which have speaking roles. Orientation Slides at 7. COBs and FLSs were classified differently for pay purposes and entered into different types of contracts. Opp. at 4; Declaration of Dakota Farr ("Farr Decl.") ¶ 2; Exh. 1a, 1b to Farr Decl. Because the different job descriptions had different responsibilities, Valbin argues that all role players are not similarly

---

[4] Valbin also objected to Saleh's initial definition of the collective action group because it was not limited to Valbin's role player employees at Fort Hunter Liggett. *See* Opp. at 8-9; Mot. at 10. However, Saleh conceded in his Reply that the collective action group should be limited to role players at Fort Hunter Liggett. Reply at 7.

8
Case No. 17-CV-00593-LHK
ORDER GRANTING MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION CERTIFICATION AND ISSUANCE OF NOTICE

situated.  Opp. at 4.

Second, Valbin disputes almost every factual allegation in the Complaint and Motion, including the length of role players' rotations and shifts, whether it paid role players overtime, whether role players were required to be in character twenty-four hours per day, whether exercises awoke role players during the night, whether role players were allowed to leave the base, and the circumstances of role players' lodging arrangements.  Opp. at 4-7.  Valbin hypothesizes that Saleh copied the allegations from another lawsuit in which he took part, *Ahmadi v. Calnet, Inc.*, No. 5:15-cv-02636 (C.D. Cal.), and made those same allegations in the instant case, despite those allegations having no basis in the facts of his employment with Valbin at Fort Hunter Liggett.[5]  Opp. at 2.  Because Saleh's claims are all contradicted by Valbin's evidence, Valbin argues that Saleh has not carried his burden to show that there was any single policy affecting all putative collective action participants or that Saleh was similarly situated to these putative participants.

In support of this argument, Valbin submits two declarations and a range of documents.  Valbin submits time sheets for Saleh and Ayon showing that they worked shifts lasting no more than twelve hours per day, and often no more than ten hours per day.  Exh. 2a to Farr Decl. at 35-44 (Ayon); Exh. 2c to Farr Decl. at 57-68 (Saleh).  Valbin also submits the declaration of Ken Plato, a Valbin exercise site manager, who states that rotations at Fort Hunter Liggett lasted five to fifteen days, not three to nineteen days as Saleh and Ayon claim.  Plato Decl. ¶ 2.  Valbin submits pay stubs for Saleh and Ayon showing that they were paid overtime.  Exh. 2a to Farr Decl. at 27-34 (Ayon); Exh. 2c to Farr Decl. at 54-56 (Saleh).  According to Plato, role players were not required to remain in character twenty-four hours per day.  Plato Decl. ¶ 3.  Nor were they awoken at night by Valbin or government employees.  *Id.* ¶ 6.  Plato states that shifts generally lasted eight to ten hours per day, and that after a shift was over, role players were free to do whatever they

---

[5] Valbin states that it will likely seek sanctions, presumably as a result of the claimed falsity of the allegations in this suit.  Opp. at 2.  While the Court takes no position at this time on whether sanctions may be warranted in this case, the Court will seriously consider imposing sanctions if the allegations are proven to be as meritless as Valbin asserts.

wanted. *Id.* ¶¶ 3, 5. Role players were allowed to and often did leave the base after the end of their shift. *Id.* ¶¶ 3, 5, 8. Plato states that role players did not sleep in fabricated villages or individual military tents. *Id.* ¶ 4. Rather, Plato says that role players slept in either "large army portable barracks (large tent-like structures for 8 to 10 individuals) or actual barracks." *Id.* Plato goes on, "If they wanted, they could sleep in hotels off base or the hotel on base, but most accepted Valbin's offer of free accommodations which, I note, included water and electricity, as well as heat and air conditioning." *Id.*

Based on this evidence, Valbin argues that Saleh has not identified "the single decision, policy, or plan that affected all of the putative collective action members," nor has Saleh demonstrated that the plaintiffs are similarly situated. Opp. at 7 (internal quotation marks omitted). For example, Valbin argues that "the evidence is plain that plaintiffs kept time sheets and that Valbin paid each of the plaintiffs overtime pay." *Id.* "If the plaintiffs are to be believed that other employees were not paid overtime as they state in their *Calnet*-copied affidavits, then these plaintiffs who were paid overtime are not similarly situated to those other persons and there is no basis for a collective action." *Id.* Moreover, Valbin argues that the Orientation Slides that Saleh submitted show that Valbin expected its employees to work from about 8:00 a.m. until 5:00 p.m. and that "employees sign daily time & attendance sheets before departing." *Id.* at 8. Valbin argues that "[g]iven this timesheet requirement, 'off the clock' work clearly was not a Valbin dictated decision, policy, or plan." *Id.*

Valbin also argues that if the Court conditionally certifies a collective action, the collective action group should be defined as all role players who worked for Valbin at Fort Hunter Liggett during the last two years—not during the last three years, as Saleh suggests. *Id.* at 9. This argument is rooted in the relevant statute of limitations for FLSA claims. FLSA claims for unpaid compensation are generally subject to a two-year statute of limitations. 29 U.S.C. § 255(a). However, "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." *Id.* Valbin argues that because there is no evidence of

10
Case No. 17-CV-00593-LHK
ORDER GRANTING MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION CERTIFICATION AND ISSUANCE OF NOTICE

any FLSA violation—let alone a willful violation—any conditional certification should only include role players who worked for Valbin within the past two years. Opp. at 9.

**C.     Analysis**

As noted above, to show that he is similarly situated to the putative collective action participants, under the notice-stage standard, Saleh must provide "'substantial allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy, or plan.'" *Kress*, 263 F.R.D. at 629. These allegations and evidence must show a "reasonable basis for [Saleh's] claim for class-wide" conduct. *Coates v. Farmers Grp., Inc.*, No. 15-CV-01913-LHK, 2015 WL 8477918, at *6 (N.D. Cal. Dec. 9, 2015). Valbin concedes that the notice-stage standard applies to the instant motion. *See* Opp. at 2-3.

Saleh has carried his burden under this "fairly lenient" standard. *See Wynn*, 234 F. Supp. 2d at 1082. Saleh alleges that role players: were required to be in character twenty-four hours per day; were required to sleep in fabricated villages or military tents; were often awoken during the night to engage in role-playing exercises; were not paid for sleep time; were not allowed to leave the base while on rotation; and were compensated for a maximum of thirteen hours of work per day. As a result, Saleh contends that role players were not paid all of the overtime pay that they were due. Saleh and Ayon submit declarations attesting to these facts. These detailed allegations go beyond "boilerplate and legal conclusions without support" that Valbin did not pay overtime. *See Heath v. Google Inc.*, 215 F. Supp. 3d 844, 857 (N.D. Cal. 2016). The allegations provide a "reasonable basis" for concluding that Valbin's alleged policies applied to all role players at Fort Hunter Liggett. As a result, the Court concludes that the collective action should be conditionally certified and that notice should be provided to the putative collective action participants. For the reasons below, Valbin's arguments do not compel a contrary result.

**1.   The Different Job Types at Issue Here Do Not Defeat Conditional Certification**

As described above, Valbin argues that Saleh is not similarly situated to the putative collective action participants because the group he proposes encompasses two types of jobs (COB

11

Case No. 17-CV-00593-LHK
ORDER GRANTING MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION CERTIFICATION AND ISSUANCE OF NOTICE

and FLS) with three job descriptions (generic role player, generic casualty role player, and foreign language speaker).  Saleh's own evidence establishes that there were three job descriptions among the role players at Fort Hunter Liggett.  Orientation Slides at 7.  However, courts often conditionally certify collective actions that include multiple job types and titles.  *See, e.g.*, *Coates*, 2015 WL 8477918 at *13 (conditionally certifying collective action comprising eleven job titles); *Wellens*, 2014 WL 2126877 at *2, 6 (conditionally certifying collective action comprising six job titles); *Stickle v. SCI W. Market Support Center, L.P.*, No. 08-083-PHX-MHM, 2009 WL 3241790, at *6-7 (D. Ariz. Sept. 30, 2009) (conditionally certifying collective action comprising seven job titles).  As a result, the mere fact that there were different types of role players does not alone defeat conditional certification.  To the contrary, the declarations of Saleh and Ayon state that based on their personal experience, they believe that Valbin's policies and procedures applied uniformly to all role players.  Saleh Decl. ¶¶ 15-16; Ayon Decl. ¶¶ 15-16.

Valbin does not seriously contend otherwise.  Indeed, Valbin vigorously disputes Saleh's factual allegations on everything from sleeping conditions to overtime pay, but Valbin does little to argue that the differences in job classification would translate into different applications of the policies Saleh alleges, were such policies to exist.  In fact, in disputing Saleh's factual allegations, Valbin consistently refers to all role players collectively, rather than differentiating between COBs and FLSs, for example.  *See, e.g.*, Opp. at 4-5 ("Valbin provided role players to the Army only for work shifts of approximately 8 to 10 hours/day, it paid its role players overtime, and these role player were not in character for the 14 to 16 hours that they were not on a work shift.").  Valbin does not contend that role players with different job types or job titles worked different hours, were subject to different overtime policies, had different sleeping arrangements, or were subject to different policies about remaining on base.  As a result, the Court concludes that the fact that Valbin's role players at Fort Hunter Liggett were categorized differently for pay or had different job titles does not defeat conditional certification.

### 2. Resolution of Disputed Facts is Not Proper at the Notice Stage

Next, Valbin contends that Saleh is not similarly situated to the putative collective action group because he has failed to establish the existence of any of the policies he alleges, let alone establish that these policies were applied to him. Opp. at 7-8. Valbin points to the time sheets, pay stubs, and declarations it has submitted, all of which contradict Saleh's allegations. *Id.* Clearly, Valbin's evidence creates a factual dispute: Saleh and Ayon submitted sworn declarations claiming certain policies exist, and Valbin submitted evidence showing the opposite. At the notice stage, however, "[i]t is not the Court's role to resolve factual disputes . . . or . . . decide substantive issues going to the ultimate merits." *Colson*, 687 F. Supp. 2d at 926 (quoting *Barrus v. Dick's Sporting Goods, Inc.*, 465 F. Supp. 2d 224, 230 (W.D.N.Y. 2006)); *see also Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 838 (N.D. Cal. 2010) ("The fact that a defendant submits competing declarations will not as a general rule preclude conditional certification."). "[A]lthough the evidence submitted by the defendants tends to contradict the plaintiffs' evidence and to reveal potential weaknesses in their case, it does not preclude conditional certification." *Longnecker v. Am. Exp. Co.*, No. 2:14-cv-0069-HRH, 2014 WL 4071662, at *5 (D. Ariz. Aug. 18, 2014) (quoting *Benson v. Asurion Corp.*, No. 3:10-cv-526, 2010 WL 4922704, at *5 (M.D. Tenn. Nov. 29, 2010)); *see also Escobar v. Whiteside Const. Corp.*, No. C 08-01120 WHA, 2008 WL 3915715, at *4 (N.D. Cal. Aug. 21, 2008) ("It may be true that the evidence will later negate plaintiffs' claims, but this order will not deny conditional certification at this stage in the proceedings."). Thus, the issues raised by Valbin are more properly dealt with at the second stage of the certification process or once the case reaches the merits phase of litigation. *See Wellens*, 2014 WL 2126877 at *5.

**3. Saleh Has Sufficiently Alleged Willfulness**

Valbin argues that if a collective action is conditionally certified, the scope of the putative collective action should be limited to the last two years, not the last three years, because Saleh has not adduced any evidence that Valbin willfully violated the statute. Opp. at 9. As discussed above, 29 U.S.C. § 255(a) provides for a three-year statute of limitations for willful violations.

13

The U.S. Supreme Court has held that willfulness in the context of FLSA means "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134 (1988).

When plaintiffs allege willfulness, "[c]ourts routinely approve a three-year notice period." *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010). Courts reason that a broader period is appropriate at the notice stage for at least two reasons. First, as discussed above, courts "avoid any merit-based determinations" at the notice stage. *Id.* (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)). As a result, if a plaintiff has plausibly alleged willfulness, courts typically will not weigh contrary evidence at the notice stage. *See Williams v. U.S. Bank Nat. Ass'n*, 290 F.R.D. 600, 614 (E.D. Cal. 2013) ("Plaintiffs have sufficiently alleged a willful violation in their complaint, and will be put to their proof at the appropriate time."). Second, courts "believe[] it is better to be overly inclusive at the notice stage" because a defendant will have the opportunity to move to decertify the class at the second certification stage or move for summary judgment against opt-in plaintiffs whose claims fall outside the two-year limitations period. *Hart v. U.S. Bank NA*, No. CV 12-2471-PHX-JAT, 2013 WL 5965637, at *6 (D. Ariz. Nov. 8, 2013); *see also Anglada v. Linens 'N Things, Inc.*, 2007 WL 1552511, at *8 (S.D.N.Y. May 29, 2007) ("[W]here there has been no substantive discovery as to the appropriate temporal scope of the prospective class of member plaintiffs, and where the Plaintiff has alleged a willful violation of the FLSA, it is prudent to certify a broader class of plaintiffs that can be limited subsequently, if appropriate, during the second phase of the collective action certification process.").

In the instant case, Saleh alleges that Valbin was aware of, and was able to comply with, all aspects of FLSA. Compl. ¶ 120. Specifically, Saleh alleges that Valbin was "aware of the requirements under the FLSA to properly compensate employees." *Id.* ¶ 113. As a result, Saleh contends that Valbin's "failure and/or refusal to properly compensate" him "at the rates and amounts required by the FLSA was willful and knowing." *Id.* ¶ 112; *see also* ¶ 132. In support of

14

these allegations, Saleh claims that "[e]mployees would regularly complain about not being paid for [sleep] time, and were simply told if they did not like it they could go home." *Id.* ¶ 9. Saleh also alleges that he "was told but disagreed and complained about" the policy of not compensating role players for sleep time when they were awoken for exercises in the middle of the night. *Id.* ¶ 110. Again, Saleh states that he "was told if he did not like it, he could simply go home." *Id.* ¶ 111. At this preliminary stage, the Court finds that Saleh has sufficiently alleged willfulness.

Accordingly, notice will be provided to all current and former role players who have worked for Valbin at Fort Hunter Liggett since February 6, 2014—three years before the filing of the instant complaint.[6] "The Court's decision to give notice for the three-year time period does not indicate a finding on willfulness." *Hart*, 2013 WL 5965637 at *6.

### D.  List of Putative Collective Action Participants, Form of Notice, and Opt-In Period

The U.S. Supreme Court has held that employees need to receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate" in the collective action. *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). "District courts have broad discretion concerning the details of a notice under 29 U.S.C. § 216(b)." *Villarreal v. Caremark LLC*, 66 F. Supp. 3d 1184, 1194 (D. Ariz. 2014) (citing *Hoffmann-LaRoche*, 493 U.S. at 170).

Saleh requests that the Court order Valbin to provide a list within 5 days of the date of this Order that includes all current and former role players who worked for Valbin at Fort Hunter Liggett within the three-year period. Mot. at 10. Saleh requests an opt-in period of 120 days from the date of this Order. Finally, Saleh provides a proposed notice and a consent to sue form that he requests that the Court approve. *Id.* Exh. E ("Proposed Notice" and "Consent to Sue Form," respectively). Besides objecting to the scope of the collective action as discussed above, Valbin

---

[6] Saleh requests that the collective action include all role players who worked for Valbin at Fort Hunter Liggett beginning February 3, 2014. *See* Reply at 7. Saleh does not explain why February 3, 2014 is the appropriate date. Because the instant complaint was filed on February 6, 2017, the Court adopts February 6, 2014 as the relevant date.

15
Case No. 17-CV-00593-LHK
ORDER GRANTING MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION CERTIFICATION AND ISSUANCE OF NOTICE

does not otherwise respond to Saleh's logistical requests or the form of the Proposed Notice. However, the Court finds that several changes to Saleh's requests, the Proposed Notice, and the Consent to Sue Form are appropriate. *See Hoffman-La Roche*, 493 U.S. at 170-71 (noting that a district court has a "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way").

First, with regard to Valbin's provision of the collective action member list, the Court finds that Saleh has not justified the need for such a short deadline. Accordingly, within 10 days of the date of this order Valbin shall provide Saleh a list, in electronic importable format, of the names and all known addresses of all proposed collective action participants. *See Coates*, 2015 WL 8477918 at *14 (allowing defendant 10 days to provide collective action member list); *Villarreal*, 66 F. Supp. 3d at 1196-97 (same).

Second, with regard to the 120-day opt-in deadline, the Court notes that the Proposed Notice contains a separate 90-day opt-in deadline. To avoid confusion, the Court declines to set two separate opt-in deadlines. Instead, Saleh shall mail notice to the potential collective action participants within 30 days of the date of this order. The potential collective action participants shall then have 90 days from the date of the Notice's mailing to postmark and return the Consent to Sue Form. The Court finds that counting 90 days from the date that the notices are mailed is more judicially administrable than counting from the date of receipt, as Saleh proposes. Accordingly, Page 2, Lines 8-9 of the Proposed Notice shall be revised to read: "The form must be postmarked and returned by [insert date 90 days from date of mailing]." Page 3, Lines 4-5 of the Proposed Notice shall be revised to read: "The envelope you return must be postmarked by [insert date 90 days from date of mailing]." *See Villarreal*, 66 F. Supp. 3d at 1195 (noting that the opt-in period "will run from the time the notice is sent, rather than from when it is received" (internal quotation marks omitted)).

Third, the definition of the collective action on Pages 1-2 of the Proposed Notice shall be revised to reflect the definition adopted in this order, namely: "All current and former role-players

16
Case No. 17-CV-00593-LHK
ORDER GRANTING MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION CERTIFICATION AND ISSUANCE OF NOTICE

who worked for Defendant Valbin Corporation at Fort Hunter Liggett at any time between February 6, 2014 and the present."

Fourth, because the Court has granted summary judgment against Jany, the Proposed Notice shall be edited to remove reference to Jany as a plaintiff. The Proposed Notice shall also be revised to reflect the current number of opt-in plaintiffs.

Fifth, Page 3, Lines 10-11 of the Proposed Notice shall be revised to replace "Your participation may depend upon a ruling from the Court regarding" with "The Defendant may later challenge". The extra period at the end of Page 3, Line 14 shall be deleted.

Sixth, the Consent to Sue Form shall be revised to remove the phrase "and/or other associated parties" at Page 6, Line 20 and the phrase "and any other associated parties" at Page 6, Line 23 because Valbin is the only named defendant in this suit.

Seventh, the Consent to Sue Form shall be revised to remove the following sentence at Page 6, Lines 24-25: "In the event this action does not certify I authorize counsel to reuse this consent form to re-file my claims in a separate or related action against Defendants." The Court finds it inappropriate to require potential collective action plaintiffs to agree to this term as a condition to opting into the collective action. *Cf. Russell v. Swick Mining Services USA Inc.*, No. CV-16-02887-PHX-JJT, 2017 WL 1365081, at *5 (D. Ariz. Apr. 14, 2017) (striking similar language from notice after defendants objected to it as impermissible solicitation); *Villarreal*, 66 F. Supp. 3d at 1195 (similar). Removing the consent for separate suits also necessitates other changes to the Proposed Notice and the Consent to Sue Form, including the description of counsel's fee structure. Specifically, the references to contingency fees at Page 3, Lines 22-24 of the Proposed Notice shall be removed. On Page 7, Line 1, the phrase "if accepted for representation" shall be deleted. On Page 7, Line 2, the phrase "without repayment of costs or attorneys' fees" shall be deleted because the payment of costs and fees is often paid indirectly from any settlement fund. On Page 7, Lines 2-7, the text beginning "I understand that if plaintiffs" and ending "2/5 of my settlement or judgment amount" shall be deleted and replaced

17
Case No. 17-CV-00593-LHK
ORDER GRANTING MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION CERTIFICATION AND ISSUANCE OF NOTICE

with the following language, which the Court finds more accurately describes attorneys' fees for collective actions: "I understand that if plaintiffs recover money, plaintiffs' attorneys will be paid whatever attorneys' fees the Court orders. Those fees may be subtracted from the settlement fund obtained from Valbin, or they may be paid separately by Valbin, or they may be a combination of the two. If plaintiffs recover no money from Valbin, plaintiffs' attorneys will not be paid for their work on this case."

Saleh shall submit a revised Proposed Notice and a revised Consent to Sue Form incorporating these changes for the Court's approval within 3 days of the date of this Order.

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED GRANTING** Saleh's motion to conditionally certify a collective action comprising all current and former role players who worked for Valbin Corporation at Fort Hunter Liggett at any time between February 6, 2014 and the present.

**IT IS FURTHER ORDERED** that within **three (3) days** of the date of this Order, Saleh shall submit for the Court's approval a revised Proposed Notice and a revised Consent to Sue Form incorporating the changes set forth herein.

**IT IS FURTHER ORDERED** that within **ten (10) days** of the date of this Order, Valbin shall provide Saleh with an electronic importable list of all current and former role players who were employed by Valbin at Camp Hunter Liggett at any time since February 6, 2014. The list shall include each putative collective action member's name and all known addresses.

**IT IS FURTHER ORDERED** that within **thirty (30) days** of the date of this Order, Saleh shall mail Notice of this action and the Consent to Sue Form to the potential collective action participants.

Dated: November 2, 2017

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

Case No. 17-CV-00593-LHK
ORDER GRANTING MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION CERTIFICATION AND ISSUANCE OF NOTICE