1  PHILLIPS DAYES
2  Trey Dayes, Esq.
   3101 North Central Avenue, Suite 1500
3  Phoenix, Arizona 85012
   (602) 288-1610 ext. 301
4  treyd@phillipsdayeslaw.com
   Counsel for Plaintiffs
5
6  NOSSAMAN LLP
   VERONICA M. GRAY (SBN 72572)
7  vgray@nossaman.com
   18101 Von Karman Avenue, Suite 1800
8  Irvine, CA 92612
   Telephone: 949.833.7800
9  Facsimile: 949.833.7878
10
   OFFIT KURMAN, P.A.
11 EDWARD J. TOLCHIN (Admitted *pro hac vice*)
   etolchin@offitkurman.com
12 4800 Montgomery Lane
   Bethesda, MD 20814
13 Telephone: 240-507-1769
   Facsimile: 240-507-1735
14 Attorneys for Defendant

15                 UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                     SAN JOSE DIVISION

18

19 | RASHAD SALEH, individually and on behalf | Case No:  5:17-cv-00593-LHK
   | of others similarly situated, |
20 |                                | **JOINT MOTION TO APPROVE**
   |           Plaintiff            | **SETTLEMENT OF COLLECTIVE**
21 |                                | **ACTION**
   |           vs.                  |
22 |                                | Date: November __, 2018
   | VALBIN CORPORATION             | Time: ____
23 |                                | Courtroom: 8, 4th Floor
   |           Defendant.           |
24 |                                | Trial: December 3, 2018 at 9:00 am.

25

26     Plaintiffs Reshad Saleh et al ("Plaintiffs") are former, part-time employees of defendant

27 Valbin Corporation ("Valbin" or "Defendant") who filed consents to join this FLSA collective

28

action.   On November 2, 2017, the district court conditionally certified this matter as a collective action.  Dkt. No. 61.  On July 24, 2018, the parties mediated this dispute and were able to resolve it. The parties now request approval of their agreement to pursuant to the Fair Labor Standards Act.

I.     BACKGROUND

Plaintiff Saleh, as the lead plaintiff in this matter, filed the instant action on behalf of himself and others under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* contending that they were Valbin employees "within the last three years" who all worked "as native role-players" in "fabricated Middle Eastern villages" used to train US servicemen at Fort Hunter Liggett ("FHL") California.  Dkt. No. 47 at p. 2.  Specifically, Plaintiffs were role players whose jobs were to interact with the troops and attempt to provide the troops a realistic idea of what they will face when stationed in places like Iraq or Afghanistan.

Plaintiffs claim that they were not given "private quarters in a homelike environment," were not provided at least "five (5) hours of uninterrupted sleep time per day," and were not "paid all of their overtime."  Doc 47 at p. 2.  The gist of Plaintiffs' claim is that the Plaintiffs were entitled to be paid for 24 hours per day because of the work conditions at the FHL facility rendered them on-duty 24 hours per day.

Plaintiffs sought conditional collective action certification under the Fair Labor Standards Act, 29 U.S.C. § 216(b), Dkt No. 47, which this Court granted on November 2, 2017. Dkt. No. 61.  Subsequently, 25 Plaintiffs joined in the matter.  Dkt. Nos. 1, 37, 39, 45, 50-53, 56-57, 70-71, 74-86.  The claims of 2 of those Plaintiffs were dismissed on statute of limitations grounds, Dkt. No. 59, ultimately leaving 23 Plaintiffs in this matter.

Defendant Valbin denied the claims and the parties engaged in discovery including interrogatories, document production, admissions, and depositions. Plaintiffs and their counsel learned in discovery that their claims against Valbin were not as substantial as they initially believed when they brought the case. The discovery showed the following facts.

Valbin served as a second-tier subcontractor under a larger prime contract. Valbin's subcontract required it to provide role players at FHL and Valbin hired Plaintiffs for these positions.

The positions were very part time during the class period provisionally certified by the Court (February 6, 2014 to the present). During these three plus years, the rotations were limited to a total of 121 work days as follows:

| Year | Start | End | Work Days In Rotation | Prep Days (limited or no work) |
|------|-------|-----|-----------------------|--------------------------------|
| 2014 | 6/7/2014 | 6/27/2014 | 17 | 3 |
| | 7/12/2014 | 8/1/2014 | 17 | 3 |
| 2015 | 2/1/2015 | 3/13/2015 | 14 | 3 |
| | 7/21/2015 | 8/4/2015 | 14 | 2 |
| 2016 | 4/30/2016 | 5/14/2016 | 10 | 2 |
| | 6/4/2016 | 6/22/2016 | 14 | 3 |
| 2017 | 6/10/2017 | 6/24/2017 | 10 | 2 |
| | 7/8/2017 | 7/28/2017 | 15 | 3 |
| | 11/10/2017 | 11/17/2017 | 5 | 2 |
| 2018 | 3/17/2018 | 3/24/2018 | 5 | 2 |

Not all Plaintiffs worked all rotations, and not all Plaintiffs worked for the full rotation. Valbin had approximately 90 different employees on these rotations, and Plaintiffs represent approximately 24% of these persons. Some of the rotations worked by Plaintiffs were beyond the maximum 3 years statute of limitations (applicable to purposeful violations), and many were beyond the general 2-year statute.[1] Furthermore, four of the Plaintiffs released certain of their

---

[1] Under the FLSA, claims for unpaid compensation are subject to a two-year statute of limitations. 29 U.S.C. § 255(a). If a violation is willful, the statute can be extended to 3 years. *Id.* The statute of limitations for FLSA

JOINT MOTION TO APPROVE SETTLEMENT OF COLLECTIVE ACTION
3

claims for the 2015 period in an earlier Department of Labor ("DoL") supervised settlement of other FLSA related claims.[2]

Below is a chart showing the number of days in which Plaintiffs were at FHL within the 3-year maximum statutory period which were not released in a DoL settlement, including the partial and no-work prep days:

| Start Date Plaintiffs during Rotation | Plaintiff | Number of Workdays with Any Time Worked |
|---|---|---|
| 6/8/2014 | Saleh | 9 days |
| 7/14/2014 | Saleh | 16 days |
| 4/30/2016 | Ayon | 11 Days |
| | Saleh | 11 days |
| | Farzam | 11 days |
| | Becceril | 11 days |
| | Mayel | 11 days |
| 6/4/2016 | Buni | 14 days |
| | Dawood | 13 days |
| | Farzam | 14 day |
| | Jarjees | 5 days |
| | Karam | 13 days |
| | Lussia | 14 days |

claims is not tolled for an opt-in plaintiff until he or she has filed a written consent with the Court.  29 U.S.C. § 256(b).

[2] DOL audited Valbin recently and found some small underpayments (not based on Plaintiffs' theories, but based on mathematical type errors) in the 2014/2015 period.  These amounts were paid to the employees, each of whom signed a release in exchange for those payments.  Four of the Plaintiffs asserting claims in this case executed these releases, waiving all or part of their claims that they assert in this action for 2014/2015.  These are Plaintiff Andrew Ayon, Mario Becerril, Shawn Daudi, and Ahmad Shekib.

| | | |
|---|---|---|
| | Makshoor | 14 days |
| | Mayel | 2 days |
| | Obaid | 14 days |
| | Pauls | 14 days |
| | Robinson | 7 days |
| | M. Saleh | 9 days |
| 6/12/2017 | Makshoor | 11 days |
| | Zadeh | 11 days |
| 7/8/2017 | Makshoor | 15 days |
| | Farzam | 15 days |
| TOTAL | | 265 days |

Based on the above, the maximum base claim here totaled $79,500, calculated as follows, assuming that each employee worked 24 hours per day (which is the basis of Plaintiffs' claim) at an average rate of $12/hour (which is the approximate average hourly rate Valbin paid to these Plaintiffs):

Claim: 265x24=6,360 hours@$12/hour = $76,320x 1.5=      $114,480

Paid: (approx.) – 265x8@$12 =                           -$25,440

OT paid (approx.) 265x2@$18 =                            -$9,540

TOTAL BASE CLAIM                                        $79,500

The 24 hour/day demand made by Plaintiffs is based on the following facts and legal position.

FHL is located several hours from any large city.  For example, it is approximately 120 miles from San Jose.  There are smaller towns nearby.  Soledad is 50 minutes north; King City is 30 minutes north; San Miguel is 30 minutes south; Paso Robles is 50 minutes south.

1    Because of FHL's remote location, role players living outside of the immediate area

2  (that is, in the larger cities and not in the small towns) were unable to commute daily.  Valbin

3  offered these employees barracks like facilities on the base to sleep if they wanted.  These

4  facilities were rudimentary but serviceable and were provided to the personnel for free.

5  Discovery showed that the personnel could, if they wanted, stay in hotels in the smaller towns at

6  their own cost and commute daily.  There also is a hotel on base which usually was available at

7  a cost, and some employees did stay there.  The Plaintiffs were not highly compensated persons

8  and, because of the cost and difficulty of the commute even from the smaller towns nearby,

9  none of the Plaintiffs stayed in the hotels.

10

11    Valbin also provided meals to its role players.  These meals were passable – usually

12  what the soldiers ate.  Given the FHL environment, this food was not of gourmet quality.

13  Consequently, the employees sometimes went into town and brought back groceries to

14  supplement the food.

15

16    When hired, each employee entered into a form of Worker's Agreement which provided

17  *inter alia* (in actual words or comparable language) that "the hours to be performed during the

18  training may vary over the course of the period of performance but can be up to 10 hours a

19  day."  Plaintiff Saleh testified at deposition that he understood from this agreement that he

20  would be paid for up to 10 hours per day and would not be paid for sleep time.

21

22    The employees worked in teams, and after each shift was over, the employees would go

23  to their tents or barracks.  Sometimes they would go to a recreation facility, but it often was

24  inconvenient or the weather was not conducive to going, so the employees stayed in the bunk

25  areas.  The employees commonly had between 5 and 12 hours between shifts.  After all the role

26  players in all the teams were brought back from the activity area (the middle eastern villages

27

28

where the scenarios occurred), the employees generally could do what they wanted, with restrictions arising from the fact that they were on a military site. The employees could go into town and did so, but many did not like to go because they were hassled getting on and off base owing to the military restrictions in the area. Additionally, the employees said that there were sometimes restrictions on where and when they could leave their bunk areas because of military activity.

Valbin paid the employees for their work between 8 to 10 hours per day, and the payments included Fair Labor Standards Act overtime payments for time in excess of the FLSA maximum.

As noted, Plaintiff's claims are the they were entitled to be paid for 24 hours/day. Defendant contends that merely residing at an employer's premises is not being on-duty, entitling the employee to pay.

DOL rules provide that the employer and employee can enter into an agreement as to what will be paid to an employee who sleeps at the place of employment, and that agreement is enforceable:

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted. This rule would apply, for example, to the pumper of a stripper well who resides on the premises of his employer and also to a telephone operator who has the switchboard in her own home. (*Skelly Oil Co. v. Jackson*, 194 Okla. 183, 148 P. 2d 182 (Okla. Sup. Ct. 1944; *Thompson v. Loring Oil Co.*, 50 F. Supp. 213 (W.D. La. 1943)).

29 C.F.R. § 785.23 (Employees residing on employer's premises or working at home).

Furthermore, even if an employee is on duty 24 hours per day, meal and reasonable

sleeping periods are excluded if agreed to by the employer and employee:

(a) General.  Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep.  If sleeping period is of more than 8 hours, only 8 hours will be credited.  Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.  (*Armour v. Wantock*, 323 U.S. 126 (1944); *Skidmore v. Swift*, 323 U.S. 134 (1944); *General Electric Co. v. Porter*, 208 F. 2d 805 (C.A. 9, 1953), *cert. denied*, 347 U.S. 951, 975 (1954); *Bowers v. Remington Rand*, 64 F. Supp. 620 (S.D. Ill, 1946), *aff'd*, 159 F. 2d 114 (C.A. 7, 1946) *cert. denied*, 330 U.S. 843 (1947); *Bell v. Porter*, 159 F. 2d 117 (C.A. 7, 1946) *cert. denied*, 330 U.S. 813 (1947); *Bridgeman v. Ford, Bacon & Davis*, 161 F. 2d 962 (C.A. 8, 1947); *Rokey v. Day & Zimmerman*, 157 F. 2d 736 (C.A. 8, 1946); *McLaughlin v. Todd & Brown, Inc.*, 7 W.H. Cases 1014; 15 Labor Cases para. 64,606 (N.D. Ind. 1948); *Campbell v. Jones & Laughlin*, 70 F. Supp. 996 (W.D. Pa. 1947)).

(b) Interruptions of sleep.  If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked.  If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted.  For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time.  (*See Eustice v. Federal Cartridge Corp.*, 66 F. Supp. 55 (D. Minn. 1946)).

29 C.F.R. § 785.22 (Duty of 24 hours or more).

Under this rule, DOL has stated that workers housed in tents while backpacking with a group would not be paid for sleep time as a tent is an adequate sleeping facility in the circumstances.  1987 DOLWH LEXIS 60, *1-4 (DOL Wage and Hour Opinions).

It is Defendant's position here that these DOL regulations control and Plaintiffs will lose this case.  In this regard, the employees agreed that they would be paid for the up to 10 hours during which they were performing in their roles.  Plaintiffs admitted that they were not on duty 24 hours per day, and they agreed that they would not be paid for time in excess of the up to 10 hours of role playing time each day at FHL.  The time spent after work, even in the barracks

provided to them, was not compensable time.

Plaintiffs believe that a different set of DOL rules apply. These alternative rules have been applied solely to persons providing care in residential care facilities when they live at the facility and are deemed to be on duty whenever they are in the facility and not asleep. That set of rules is explained in *Muan v. Vitug,* No. 5:13-cv-0331-PSG (N.D. Cal Apr. 11, 2014) and associated DOL rulings which permit only sleep time to be deducted as the persons are deemed to be on duty whenever they are in the facility, and even sleep time cannot be deducted unless the employees are able to sleep in a "homelike" environment. These "homelike" environment DOL rulings apply on their face only in the residential care facility context where they were specifically promulgated to apply, have never been applied outside that context, and have no relationship to the type of role playing work at issue.

On July 24, 2018, the parties participated in a full-day mediation with Michael Loeb, an experienced mediator with JAMS with significant experience mediating wage and hour class actions. *See* https://www.jamsadr.com/loeb/. During that mediation, and with the expert help of Mr. Loeb, the parties resolved the case pursuant to the attached settlement agreement. *See* **Exhibit 1** hereto.

II.       THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT.

A district court may approve an FLSA settlement as long as the settlement is a fair and reasonable settlement of a bona fide dispute. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). In deciding whether a settlement under the FLSA is "fair and reasonable" courts balance numerous factors, including "the strength of Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the extent of the discovery completed, the stage of the proceedings, and the experience and views of counsel." *Trinh v. JP*

*Morgan Chase & Co.*, No. 07-cv-01666 W(WMC), 2009 WL 532556, at *1 (S.D. Cal. Mar. 3, 2009).

      A.    <u>The Settlement Is Fair and Reasonable</u>

      The settlement here is a fair and reasonable compromise of the Plaintiffs' claims. This action involves only 23 of the potential 90 employees during the period at issue. The parties engaged in significant discovery, including the depositions of two Plaintiffs and a manager of Defendant's operations at FHL, and the exchange of more than a thousand pages of documents. The parties recognized that significant time and expense would need to be expended if the litigation continued and there always is uncertainty in any litigation. But, because the maximum claim of the Plaintiffs is significantly less than the Plaintiffs initially believed, and the costs of trial are significant, the parties entered arm's length settlement negotiations that were facilitated by an experienced mediator.

      Plaintiffs have considered the potential value of their claims and concluded that the proposed settlement provides a fair and reasonable resolution of their claims. In particular, Plaintiffs calculated potential damages for each plaintiff by: (1) identifying the number of days each plaintiff worked during the relevant limitations period, (2) identifying each plaintiff's pay rate, (3) and calculating the maximum overtime pay. Based upon the above assumptions, potential damages for each plaintiff were calculated under the FLSA's standard two-year limitations period and three-year limitations period for willful actions. The estimated maximum total base damages for Plaintiffs' claims was less than $80,000, as explained above, assuming no liquidated damages. Plaintiffs understood that if Valbin can establish that it acted in good faith and with a reasonable belief that it was not violating the FLSA under the DOL's prior rulings, or that it indeed did not violate the FLSA, that perhaps Plaintiffs would recover nothing

and certainly not liquidated damages.  *See* 29 U.S.C. §s 258 and 260.  Thus, the Plaintiffs'

possible recovery ranged from $0 to $160,000 (2 x $80,000).

In compromising their claims for $30,000 and with Plaintiffs' counsel waiving

attorney's fees, each plaintiff will receive about 19% percent of their maximum damages

including liquidated damages, and will not pay any attorneys' fees.  Plaintiffs have fully

evaluated the likelihood of prevailing on the merits of their claims and considered the

substantial defenses here, and determined that this is a fair compromise of their claims.  Valbin

supports this result because it eliminates the risks, uncertainties, and cost of further litigation.

Nineteen percent is within the range that courts have found to be fair and reasonable given the

costs and uncertainty of litigation.  *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

459 (9th Cir. 2000) (finding settlement for approximately 17 % of the potential maximum was

fair and adequate); *Glass v. UBS Fin. Servs., Inc.*, No. CV-06-4068 MMC, 2007 WL 221862, at

*4 (N.D.  Cal. Jan. 26, 2007) (settlement of a wage and hour class action for 25 to 35 percent of

claimed damages was reasonable under circumstances), *aff'd*, 331 F. App'x 452 (9th Cir. 2009).

Additionally, each plainitff will receive his or her pro rata share of the award based on

the number of plaintiffs and the amount of the payment.  No plaintiff is given any perferential

treatment.  Thus, the agreement is fair.  *See, e.g., Tijero v. Aaron Bros., 301 F.R.D. 314, 324*

*(N.D. Cal. 2013)* (finding settlement fair and reasonable as "[t]here is no indication that the

proposed settlement improperly grants preferential treatment to class representatives or

segments of the class . . . [and t]he methodology agreed to by the parties for allocating

[settlement amount] appears fair and reasonable"); *Monterrubio v. Best Buy Stores, Ltd. P'ship,*

*291 F.R.D. 443, 455 (E.D. Cal. 2013)* (no preferential treatment among settlement recipients

supposrts that settlement was fair).

1    Furthermore, in signing the settlement agreement[3], each Plaintiff was made fully aware

2    of the total recovery, his or her pro rata share, and the pro rata shares of each other Plaintiff.

3    This fact supports that each Plaintiff[4] found his or her pro rata share to be fair and adequate.

4    *See Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) (positive

5    reaction of settlement class supports that agreement was fair and adequate).

6

7          B.    The Scope of the Waiver and Release is Fair and Reasonable.

8          The parties' waiver and release provision is limited to employment claims.  *See* Exhibit

9    1 at section 2.1.  No other claims are released.  Furthermore, statutory employement claims are

10   excluded.  *See* Exhibit 1 at section 2.5.  This release will bring an end to this dispute and is a

11   reasonable resolution that will provide Valbin the consideration it reasonably requires to pay

12   $30,000 to settle claims which it does not believe are legally valid.

13

14   III.    PLAINTIFFS' EXPENSE APPLICATION SHOLD BE APPROVED.

15         The Court should approve Plaintiffs' expenses in the amount of $10,120.62.  These

16   amounts are reasonable on their face.  They consist primarily of travel, deposition, and

17   mediation expenses, and related expenses directly benefiting Plaintiffs.  *See* **Exhibit 2** hereto

18   (Declaration of Trey Dayes).

19

20         Plaintiffs' counsel accepted this matter on a contingent basis with the attendant risk that

21   counsel would receive no fee or expense reimbursement.  In this case, plainitiff's counsel has

22   waived its fee and seeks to recover solely out-of-pocket costs.

23

24

25   [3] Exhibit 1 is a copy of the agreement signed by Named Plaintiff Reshad Saleh; Exhibit 3 is a copy of the agreement signed by each of the Opt-In Plaintiffs, which clearly indicates the allocation of payment each Plaintiff will receive from the settlement amount. Mr. Saleh has also agreed to the allocation.

26

27   [4] As of the time of filing, 19 of 23 Plaintiffs have executed their settlement agreements. Plaintiff's counsel anticipates that the remaining 4 Plaintiffs will execute their settlement agreements prior to the scheduled hearing on this Motion on November 15, 2018.

28

Starting from 2016 through the present, Plaintiffs' counsel has incurred a total of $10,120.62 in expenses litigating this action on behalf of Plaintiffs and the others involved in the aggregate settlement. Dayes Decl. at ¶ 3. Those expenses include, among other things mediator fees, filing fees, depositions and related travel expenses, and related expenses. *See id.* Mr. Dayes' Declaration attaches an itemization of these costs.

Plaintiffs' counsel's agreements with their clients provide for reimbursement of litigation expenses. Dayes Decl. at ¶ 5. Plaintiffs were informed of their *pro rata* share of the expenses and approved their allocation of the expenses before agreeing to the settlement. *Id.* at ¶ 6. Thus, the Court should honor the private agreements between Plaintiffs' counsel and its clients and approve reimbursement of $10,120.62 of expenses through this settlement.

These expenses are those that would typically be billed to a paying client in a non-contingency matter and therefore Plaintiffs' counsel's expenses should be deemed reasonable. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters.) In *Harris*, the court held that expenses for service and summons of a complaint, service of trial subpoenas, the fee for a defense expert at a deposition, postage, investigator, copying, hotel bills, meals, messenger service, and employment record reproduction were reasonable. *Id.* at 19-20. Courts also find that travel expenses are reasonable litigation expenses. *See Burden v. Selectquote Ins. Servs.*, No. C 10-5966 LB, 2013 U.S. Dist. LEXIS 109110, at *15-16 (N.D. Cal. Aug. 1, 2013)

For these reasons, the Court should approve Plaintiffs' counsel's reimbursement of $10,120.62 of expenses.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, the parties jointly request that the Court approve the settlement agreement as fair and reasonable and enter an order dismissing Plaintiffs' claims with prejudice.

Respectfully submitted,

PHILLIPS DAYES
Trey Dayes, Esq.

/s/ Trey Dayes (pro hac vice)

Date:    October 29, 2018

Trey Dayes
PHILLIPS DAYES
3101 North Central Avenue
Suite 1500
Phoenix, Arizona 85012
(602) 288-1610 ext. 301
treyd@phillipsdayeslaw.com
Counsel for Plaintiffs

Date:    October 29, 2018

NOSSAMAN LLP
VERONICA M. GRAY

/s/ Veronica M. Gray

Veronica M. Gray
18101 Von Karman Ave., Ste. 1800
Irvine, CA 92612
Telephone: 949.833.7800
Facsimile: 949.833.7878
Attorneys for Defendant Valbin Corp.

Date:    October 29, 2018

OFFIT KURMAN, P.A.
EDWARD J. TOLCHIN (Admitted *pro hac vice*)

/s/ Edward J. Tolchin

Edward J. Tolchin
4800 Montgomery Lane, 9th Fl.
Bethesda, MD 20814
Telephone: 240-507-1769
Facsimile: 240-507-1735
Attorneys for Defendant Valbin Corp.

**PROOF OF SERVICE**

STATE OF ARIZONA, COUNTY OF MARICOPA

     I am employed in the County of Maricopa, State of Arizona. I am over the age of 18 and not a party to the within action. My business address is Phillips Dayes Law Firm PC, 3101 North Central Avenue, Phoenix, Arizona 85012.

     On October 29, 2018, I served **JOINT MOTION TO APPROVE SETTLEMENT OF COLLECTION ACTION** upon the following interested parties in this action:

| | |
|---|---|
| NOSSAMAN LPP | OFFIT KURMAN, P.A. |
| Veronica M. Gray (SBN 72572) | EDWARD J. TOLCHIN (*appearing pro hac vice*) |
| vgray@nossaman.com | etolchin@offitkurman.com |
| 18101 Von Karman Avenue, Suite 1800 | 4800 Montgomery Lane |
| Irvine, CA 92612 | Bethesda, MD 20814 |
| Telephone: 949.833.7800 | Telephone: 240-507-1769 |
| Facsimile: 949.833.7878 | Facsimile: 240-507-1735 |

Attorneys for Defendant

[   ]   BY MAIL: I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Phillips Dayes' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Phoenix, Arizona.

[XX]   BY E-MAIL OR ELECTRONIC TRANSMISSION: I caused a copy of the document(s) to be sent to the persons at the e-mail addresses listed above.

     I declare under penalty of perjury under the laws of the State of Arizona that the above is true and correct.

1

Executed on October 29, 2018, at Phoenix, Arizona.

2

/s/Sean Davis *(appearing pro hac vice)*
Sean Davis, Attorney at Law

3

4811-0184-4089 v.1

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28